IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TRACY TEMPLETON SMITH,

    Plaintiff,

v.

LEVEL 3 COMMUNICATIONS INC.,

    Defendant.

No. C 14-05036 WHA

**ORDER RE MOTION TO FILE AMENDED COMPLAINT**

## INTRODUCTION

In this employment action, plaintiff moves to amend her complaint. Plaintiff's motion is **GRANTED IN PART AND DENIED IN PART**.

## STATEMENT

Plaintiff, Tracy Templeton Smith, worked for defendant, Level 3 Communications, for over six years. Level 3 promoted her to the position of director of large enterprise accounts in 2010 but terminated her in September of 2013. Plaintiff participated in Level 3's incentive compensation plan, under which previously earned commissions were forfeited if the employee was no longer with the firm at the end of a given quarter or year. Plaintiff alleges defendant owed her approximately $30,000 in unpaid commissions when defendant terminated her. Plaintiff alleges that these commissions had been fully earned, and the only requirement left to receive them was for plaintiff to be employed at the end of the year. Plaintiff alleges Level 3 terminated her shortly before the commissions were to be paid, in order to avoid paying plaintiff the earned commissions.

Based on her performance and projected sales, plaintiff estimates she would have gone on to earn an additional $95,600 in commissions in 2013 had she not been wrongfully terminated (FAC ¶¶ 4, 7).

In April 2013, plaintiff's mother was diagnosed with cancer. Plaintiff engaged in several conversations with Level 3's human resources department regarding her need to take time off to care for her mother. Human resources informed plaintiff that she would need to use all of her stored-up vacation time, which included sick-leave time, before she could use FMLA or CFRA leave time. Plaintiff alleges that Level 3 harassed her and prevented her from using her vacation time by "demanding she complete and deal with work-related assignments and meetings." This allegedly included sending her work-related emails, demanding that she complete reports and forecasts, and requiring her to attend telephone conferences.

In the summer of 2013, Level 3 conducted a significant reduction in force and terminated plaintiff in September of 2013 (FAC ¶¶ 5–6, 8–9).

A previous order dismissed plaintiff's original complaint because she did not allege sufficient facts to make out any plausible claims for relief (Dkt. No. 19). Plaintiff's proposed amended complaint has been narrowed down to the following six claims: (1) violations of California Labor Code Sections 201 and 203 for failing to pay wages due upon termination; (2) violation of California Labor Code Section 233 relating to Level 3's alleged harassment of plaintiff; (3) violations of the CFRA relating to Level 3 allegedly forcing plaintiff to use sick time before taking CFRA leave; (4) wrongful termination in violation of public policy; and (5) unfair business practices under Business and Professions Code Section 17200; and (6) violation of California Labor Code Section 219 relating to Level 3's commission plan. This is not a proposed class action.

**ANALYSIS**

Under Federal Rule of Civil Procedure 15(a)(2), leave to amend a pleading should be freely given when justice so requires. But leave may be denied "where the amendment would be futile." *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for

relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when there are sufficient factual allegations to draw a reasonable inference that defendants are liable for the misconduct alleged. While a court "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**1. SECTIONS 201 AND 203 CLAIMS.**

Plaintiff's first amended claim alleges that defendant failed to pay wages that were owed upon the termination of plaintiff's employment, in violation of California Labor Code Sections 201 and 203. Section 201 requires employers to pay employees unpaid and earned wages upon termination. Section 203 sets out penalties for employers that fail to comply with Section 201 in a timely manner. Further clarifying Sections 201 and 203 is Section 219(a), which states that "no provision of this article can in any way be contravened or set aside by a private agreement, whether written, oral, or implied."

The issue is whether the "commissions" that plaintiff had banked under Level 3's incentive compensation plan constituted "earned wages," entitling her to payment when she was terminated, or whether these "commissions" constituted a discretionary bonus, not entitling her to payment. Under Section 200(a), "wages" are defined as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation."

Moreover, even if plaintiff signed a contract explicitly allowing her employer to keep commissions she had earned if her employer terminated her, in violation of Sections 201 and 203, that contract would not be valid, as clarified in Section 219(a) above.

The California Supreme Court addressed incentive programs in relation to payment upon termination in *Schachter v. Citigroup, Inc.*, 47 Cal. 4th 612, 621 (2009). In *Schachter*, the plaintiff had enrolled in the employer's incentive compensation program, under which the employer paid some compensation via restricted stock. The issue was whether restricted stock that had not fully vested constituted earned wages under the Labor Code. That decision found that the unvested restricted stock was not an earned wage (*id*. at 621–22):

> Having elected to receive some of his compensation in the form of restricted stock, a transaction he was aware carried risk as well as the potential for reward, Schachter cannot now assert that he should have been paid in cash that portion of his compensation he elected to receive as restricted stock. As the company persuasively argues, Schachter's bargained-for 'wages' have been paid in full. He received all of his promised cash compensation, received immediately exercisable voting and dividend rights in the restricted stock, and was awarded contingent rights of full ownership in that stock. The only thing that has not been 'paid' is something Schachter never 'earned' — fully vested [company] stock. Schachter therefore has no claim under [section] 201.

*Schachter* went on to state, however, that the law treats earned commissions differently: "In the analogous context of commissions on sales, it has long been the rule that termination (whether voluntary or involuntary) does not necessarily impede an employee's right to receive a commission where no other action is required on the part of the employee to complete the sale leading to the commission payment." *Id*. at 622.

Based on the standard laid out in *Schachter*, an employer violates Section 201 when an employee has earned commissions, has nothing left to do but remain employed to receive payment, and then the employer terminates the employee for the purpose of keeping the commissions for itself.

The only three decisions from our court of appeals that have considered this issue have found similarly. *Kempf v. Barrett Business Services, Inc.*, held that because the employee had "performed his obligations under the agreement," his "bonus was a wage that must be paid under Section 201." 336 Fed. Appx. 658, 662 (9th Cir. 2009). *Pugel v. Stanley* held that the "plain language of Sections 201 and 203 make no exceptions for commission-based payments." 221 Fed. Appx. 683, 686 (9th. Cir. 2007). Lastly, *Staton v. Husky Computers, Inc.*, held that an employee presented a triable issue of fact as to whether his employer "owed him commissions at the time of termination." 176 F.3d 484, 485 (9th Cir. 1998).

Plaintiff alleges Level 3's commission plan consisted of the following (FAC ¶ 8):

> The amount which Plaintiff and other qualified employees could receive was capped each quarter at a percentage of the quotas thereby limiting how much Plaintiff could receive in the way of

4

> commissions at that time.  If Plaintiff exceeded the cap, the excess earned commissions were set aside, "banked," by Defendant and held pending completion of the calendar year.  Each quarter the commission caps increased so that more commissions were paid out as the year progressed. . . . If the Plaintiff had remained on the payroll on December 31, 2013, she would have received all of the "banked" commissions.  However, if Plaintiff or any other qualified employee was terminated at any time prior to December 31st, even if it was effective on December 30th, according to the Commission Plan all of the "banked" commissions which had been earned and were not subject to any other conditions other than being on the payroll on December 31st would be forfeited.

In other words, after an employee hit a certain sales target for a given quarter, Level 3 set aside any commissions that the employee earned on sales in excess of that target.  These excess commissions were "banked," and only paid out to the employee if Level 3 still employed her at the end of the year.

Plaintiff alleges defendant owed her approximately $30,000 in commissions she had earned when defendant terminated her, and that she would have earned an additional $95,600 had she stayed at Level 3 until the end of 2013.  She alleges that defendant terminated her to avoid paying her these earned commissions.

Based on the description of Level 3's incentive compensation program, it is plausible that the $30,000 in banked commissions constituted wages under the definition set forth in Section 200.  The $95,600 that plaintiff alleges she would have earned throughout the rest of 2013 had she not been terminated, however, had not yet been earned in any respect and thus nonpayment of that sum did not violate Sections 201 and 203.

Defendant argues that the proposed amended complaint fails to plead sufficient facts to raise a claim under Sections 201 and 203 and that plaintiff's allegations regarding how much she was owed are conclusory.  For example, defendant contends that plaintiff "fails to state the sale and revenue quotas, and how Ms. Smith's performance exceeded these quotas."  Moreover, defendant asserts that plaintiff fails to "allege any details regarding 'all of the conditions' for payment of the incentive payments, or how she allegedly satisfied them" (Opp. at 7).  Plaintiff

5

is not required to allege this level of detail at the motion to dismiss stage. Plaintiff's amended complaint alleges sufficient facts to make out a plausible claim that the $30,000 in banked commissions constituted earned wages, that defendant owed her these commissions when defendant terminated her, and that defendant failed to pay her these wages.

Plaintiff's motion to amend her Sections 201 and 203 claims, only as to the $30,000 she actually earned, is **GRANTED**.

### 2. SECTION 233 CLAIM.

Plaintiff's next claim for relief states that defendant harassed plaintiff, interfered with her taking sick time off to care for her mother, and thus violated Section 233 of the California Labor Code. Section 233(a) states that employers must "permit an employee to use in any calendar year the employee's accrued and available sick-leave that would be accrued during six months at the employee's then current rate of entitlement, to attend to an illness of a child, parent, spouse, or domestic partner of the employee." Section 233(c) goes on to state: "No employer shall deny an employee the right to use sick-leave or discharge, threaten to discharge, demote, suspend, or in any manner discriminate against an employee for using, or attempting to exercise the right to use, sick-leave to attend to an illness of a child, parent, spouse, or domestic partner of the employee."

Plaintiff's amended complaint fails to allege sufficient facts to state a plausible claim for relief under Section 233. Plaintiff generally alleges that defendant "interfered with and prevented her ability to [take sick-leave] by continually demanding she complete and deal with her work-related assignments and meetings." She states that this prevention and harassment occurred on a daily basis. Plaintiff goes on to allege that she could not take sick-leave because defendant sent her many emails, required her to attend telephone conferences and meetings, and asked her to complete reports and forecasts. Plaintiff states that she emailed with Level 3's human resources department on at least ten occasions regarding sick-leave and discussed the matter in one-on-one sessions (FAC ¶¶ 5–6).

6

These allegations are simply too thin. Plaintiff fails to allege one single instance in which she requested to take sick-leave and was refused. Rather, she generally states that defendant harassed her because defendant constantly required her to complete work-related tasks such as attending meetings and completing reports. Plaintiff knows the facts on this issue and needs no discovery to ascertain what happened. If defendant violated Section 233, plaintiff should be able to plead more.

Plaintiff's motion to amend her Section 233 claim is **DENIED**.

### 3. CFRA CLAIM.

Plaintiff's next claim alleges that defendant forced her to use sick-leave before taking time off pursuant to the California Family Rights Act and thus violated the CFRA. Plaintiff's amended CFRA claim suffers from several pleading deficiencies.

*First*, plaintiff fails to specify which section of the CFRA defendant allegedly violated. Instead, she simply asserts that defendant's actions "constituted violations of the CFRA and the California Fair Employment and Housing Act of which the CFRA is a part." She does not quote from any section of the CFRA, list what the elements of a CFRA claim are, or allege how those elements have been satisfied in our case.

*Second*, even if it could be construed that plaintiff meant to plead a violation of California Government Code Section 12945.2, titled Family Care and Medical Leave, she has not adequately pled the elements of that claim. Section 12945.2(a) states:

> Except as provided in subdivision (b), it shall be an unlawful employment practice for any employer, as defined in paragraph (2) of subdivision (c), to refuse to grant a request by any employee with more than 12 months of service with the employer, and who has at least 1,250 hours of service with the employer during the previous 12-month period, to take up to a total of 12 workweeks in any 12-month period for family care and medical leave. Family care and medical leave requested pursuant to this subdivision shall not be deemed to have been granted unless the employer provides the employee, upon granting the leave request, a guarantee of employment in the same or a comparable position upon the termination of the leave. The commission shall adopt a regulation specifying the elements of a reasonable request.

7

The proposed amended complaint fails to allege that defendant qualified as an "employer" under the statute. Specifically, plaintiff fails to allege that defendant employs more than fifty employees within seventy-five miles of the worksite where plaintiff worked. *See* Cal. Gov't Code Section 12945.2(b)(2)(A). Plaintiff also fails to specifically allege that she qualified as an employee under the statue, in that she worked more than 1,250 hours for defendant in the twelve-month period before her termination. Moreover, plaintiff fails to specifically allege that she made a reasonable request to "take up to a total of 12 workweeks in any 12-month period for family care and medical leave."

Plaintiff's motion to amend her CFRA claim is **DENIED**.

### 4. WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY CLAIM.

Plaintiff's next claim asserts that she was wrongfully terminated in violation of public policy. Under California law, employment is at-will unless the parties contract otherwise. *See* Cal. Lab. Code 2922. California courts, however, have carved out a specific exception to this general rule: an employer will be liable if it terminates an employee in violation of public policy. *See Stevenson v. Super. Ct.*, 16 Cal. 4th 880, 894 (1997). *Stevenson* established a set of requirements that a policy must satisfy to support a claim of wrongful termination in violation of public policy:

> First, the policy must be supported by either constitutional or statutory provisions. Second, the policy must be "public" in the sense that it "inures to the benefit of the public" rather than serving merely the interests of the individual. Third, the policy must have been articulated at the time of discharge. Fourth, the policy must be "fundamental" and "substantial."

*Ibid*; *see also Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1137–38 (9th Cir. 2003).

Plaintiff's public policy claim is predicated upon violations of the several California statutes laid out above. Our court of appeals has held that discharge in violation of the California Labor Code provisions discussed herein (Sections 201 and 203), as a matter of law,

constitutes wrongful termination in violation of public policy. *See Staton v. Husky Computers, Inc.*, 176 F.3d 484, 485 (9th Cir. 1998).

Moreover, in *Gould v. Maryland Sound Industries*, *Inc.*, 31 Cal. App. 4th 1137, 1148 (1995), the California Court of Appeal considered a fact pattern similar to ours. That decision held that "if MSI discharged Gould in order to avoid paying him the commissions, vacation pay, and other amounts he had earned, it violated a fundamental public policy of this state." *Ibid*. That is exactly what plaintiff alleges here — that she had earned commissions and Level 3 fired her right before the end of the quarter to avoid paying those commissions. Based on this allegation, plaintiff's wrongful termination in violation of public policy claim must survive.

Defendant argues that because plaintiff has failed to state a claim under the California Labor Code, she cannot make out a claim for wrongful termination in violation of public policy. Defendant also argues that the California Labor Code Sections it allegedly violated do not meet the elements set forth in *Stevenson*. Defendant relies on *Rojo v. Kliger*, 52 Cal. 3d 65 (1990). That decision held that "where a statute creates a right that did not exist at common law and provides a comprehensive and detailed remedial scheme for its enforcement, the statutory remedy is exclusive." *Id*. at 79. Defendant also relies on *City of Moorpark v. Superior Court,* 18 Cal. 4th 1143 (1998). That decision held that when a provision "includes certain substantive limitations in scope or remedy, these limitations also circumscribe the common law wrongful discharge cause of action." *Id*. at 1159. Defendant argues that these two holdings, in combination, support the argument that plaintiff cannot sustain a wrongful termination in violation of public policy claim based on her California Labor Code Sections 201 and 203 claims.

Defendant's arguments are unavailing. Neither *Rojo* nor *City of Moorpark* considered any of the Labor Code Sections outlined above. Defendant does not cite a single decision that interprets Sections 201 or 203 in this manner and this order can find none. Courts that have addressed these Labor Code Sections have found that plaintiffs can allege a violation of public policy claim in concert with the underlying statutory claims as a matter of law. "California has

9

a strong public policy in applying and enforcing its employment laws. For example, California Labor Code 201 (immediate payment of wages upon discharge or layoff) and 203 (failure to make payment within required time) encompass this fundamental public policy." *DHR Int'l Inc. v. Charlson*, No. C 14–1899, 2014 WL 4808752 at *5 (N.D. Cal. Sept. 26, 2014) (Judge Phyllis Hamilton) (citing *Smith v. Sup. Ct.*, 39 Cal. 4th 77, 82 (2006); *see also Staton v. Husky Computers, Inc.*, 176 F.3d 484, 485 (9th Cir. 1998). Because this order finds that plaintiff has adequately alleged her Sections 201 and 203 claims, and plaintiff's public policy claim is derivative of these claims, plaintiff's motion to amend her wrongful termination in violation of public policy claim is **GRANTED**.

### 5. BUSINESS AND PROFESSIONS CODE SECTION 17200 CLAIM.

Plaintiff's other derivative claim involves alleged violations of Section 17200 of the California Business and Professions Code ("UCL"). The UCL bans "unlawful, unfair or fraudulent business act[s] or practice[s]." Cal. Bus. & Prof. Code 17200. The unlawful prong of the UCL prohibits "anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). Defendant's sole contention is that this claim is entirely derivative of plaintiffs' other claims and therefore should be dismissed. Because this order finds merit in plaintiff's Section 201 and 203 claims, plaintiff's motion to amend her Section 17200 claim is **GRANTED**.

### 6. SECTION 219(a) CLAIM .

California Labor Code Section 219(a) states: "Nothing in this article shall in any way limit or prohibit the payment of wages at more frequent intervals, or in greater amounts, or in full when or before due, but no provision of this article can in any way be contravened or set aside by a private agreement, whether written, oral, or implied."

The existence of a private right of action depends on whether the legislature has manifested an intent to create such a right, which is revealed through the language of the relevant statute and its legislative history. *Lu v. Hawaiian Gardens Casino, Inc.*, 50 Cal. 4th

10

592, 596–597 (2010). When a statute is adopted, it "does not automatically create a private right to sue for damages resulting from violations of the statute." *Vikco Ins. Svcs. V. Ohio Indem. Co.*, 70 Cal. App. 4th 55, 62 (1999).

The language of Section 219(a) clearly does not express an intent to create its own private right of action. Rather, it clarifies that other sections of the Code cannot be contravened by private agreement. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 990 (9th Cir. 2007).

Plaintiff argues that Section 219(a) does create its own private right of action, but does not provide any relevant support for this contention. Plaintiff asserts that *Caliber Bodyworks, Inc. v. Superior Court*, 134 Cal. App. 4th 365 (2005) is "directly on point with the instant matter." That decision, however, does not discuss Section 219. Neither do any of the other decisions plaintiff relies on for this proposition. At oral argument, plaintiff intimated that Labor Code Section 244 somehow implies that a plaintiff has a private right of action under Section 219(a) (Tr. 18). Not so. Section 244 merely states that an individual is not required to exhaust administrative remedies to bring a civil action under the Labor Code. The language of Section 219(a), however, is clear that it merely clarifies that other sections of the Labor Code cannot be contravened by private agreement. Plaintiff does not cite to any authority indicating that Section 219(a) provides for a stand alone private right of action.

Plaintiff's motion to amend her Section 219(a) claim is **DENIED**.

## CONCLUSION

To the extent stated above, plaintiff's motion to amend her complaint is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's motion to amend her California Labor Code Sections 201 and 203 claims, only as to the $30,000 she actually earned, is **GRANTED**. Plaintiff's motion to amend her wrongful termination in violation of public policy claim is **GRANTED**. Plaintiff's motion to amend her Business and Professions Code Section 17200 claim is **GRANTED**. Plaintiff's motion to amend her CFRA and California Labor Code Sections 219 and 233 claims

11

is **DENIED**.

Accordingly, plaintiff shall file the amended complaint, in conformity with this order, by **NOON ON MARCH 2, 2015**. There will be no more attempts to plead. Defendant must then file its answer by **NOON ON MARCH 16, 2015**. No more motions to dismiss shall be brought. Discovery may proceed, effective now.

**IT IS SO ORDERED.**

Dated: February 24, 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

12